THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS INC., | No. 2:16-cv-00402-TSZ |
| Plaintiff, | **DEFENDANT BELKIN INTERNATIONAL INC.'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | |
| BELKIN INTERNATIONAL, INC., | **ORAL ARGUMENT REQUESTED** |
| Defendant. | DUE DATE: |
| | April 14, 2017 |

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ)  – 1

LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  THE '861 PATENT DESCRIBES COMPONENTS IN A SPECIFIC
    ARRANGEMENT ............................................................................................. 2

    A.  The '861 Patent Depicts Four Primary Components ............................. 2

    B.  The Claims Distinguish the Spacer from the Ribs................................ 4

    C.  The Prosecution History Confirms That the Ribs Are Not the Same
        Structure as the Spacer ........................................................................ 6

III.  THE APPLICABLE LAW FAVORS BELKIN'S PATENT-CENTERED
     APPROACH .................................................................................................... 8

IV.  BELKIN'S CONSTRUCTIONS ARE CORRECT ........................................... 9

    A.  "Stand-off" (Claims 2-3) / "Spacer" (Claims 7, 8, 10, 11, 12) ............. 9

    B.  "Ribs" Must Be Construed to be a Separate Structure From the "Spacer" ......... 12

    C.  "Joined Between".................................................................................. 16

V.  CONCLUSION................................................................................................. 17

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – i

LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*,
    616 F.3d 1249 (Fed. Cir. 2010)................................................................. passim

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*,
    224 F.3d 1308 (Fed. Cir. 2000)........................................................................8

*Cat Tech LLC v. TubeMaster, Inc.*,
    528 F.3d 871 (Fed. Cir. 2008)...................................................................13, 16

*Engel Indus., Inc. v. Lockformer Co.*,
    96 F.3d 1398 (Fed. Cir. 1996)..........................................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc).........................................................8

*Regents of Univ. of Minn. V. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013)........................................................................13

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001)........................................................................9

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)..........................................................................9

**STATUTES**

35 U.S.C. § 103.....................................................................................................6

**OTHER AUTHORITIES**

American Heritage College Dictionary (4th ed. 2007).........................................15

Illustrated Dictionary of Mechanical Engineering (2015)...................................15

Webster's New College Dictionary (3rd ed. 2008)..............................................15

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   **I.      INTRODUCTION**

2          This case involves a patent on a "mounting platform" used to hold a cellular phone to a

3   car dashboard or window.  As the Court might imagine, there are many such patents and devices.

4   To distinguish itself, NPI's patent claims a specific arrangement of parts.  A drawing from the

5   '861 patent is shown here with the four principal components labeled and shaded:



11  The top piece is rigid mounting plate to which a suction cup attached to the phone can be

12  attached.  The bottom piece consists of a "skirt" and flexible legs with adhesive backing to stick

13  to the dashboard.  As relevant here, the plate (on top) and the skirt/legs (on the bottom) are

14  separated by a "stand-off" or "spacer," which the inventor also called a "post or stem," that

15  projects from the bottom of the mounting plate.  Separately protruding from the stand-off or

16  spacer are "ribs" that connect the plate on top and the skirt on bottom.  The four basic parts are

17  claimed in a specific arrangement, including one claim in which the ribs are "joined between"

18  the spacer and another component.   As a matter of black letter patent law, this requires the "rib"

19  to be a separate component from a spacer.

20         The parties exchanged constructions and NPI made infringement contentions based on

21  that specific arrangement.  But, after Belkin had seen the '861 patent and NPI's contentions, it

22  designed further away from the patent by simply removing the accused "ribs" that are required in

23  every claim.  The redesign was completed shortly after the parties started the claim construction

24  process.  After NPI saw the new design, however, it waited until just before claim construction

25  briefing and submitted a request to the Court to abandon its earlier infringement contentions,

26  drop claims and terms to ignore inconsistencies, and contort its case to cover the new design that

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 1
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   lacks any conceivable "rib."  Belkin opposes NPI's Motion to Amend separately, but the disputes

2   over amendment and claim construction overlap because both revolve around the arrangement of

3   these four components and whether NPI can ignore how the '861 patent claims them.

4         Belkin's proposed constructions preserve the important distinctions between these

5   components while also being tied to the claims' actual words, their common and ordinary

6   meaning, and the intrinsic record.  NPI's constructions, on the other hand, are an attempt to

7   ignore the scope of its patent and abandon its original infringement positions, and as a result, are

8   predictably inconsistent.  Belkin's constructions should be adopted.

9   **II.     THE '861 PATENT DESCRIBES COMPONENTS IN A SPECIFIC**
      **ARRANGEMENT**

10

11      **A.     The '861 Patent Depicts Four Primary Components**

12        The '861 Patent is entitled "Suction Cup Mounting Platform Having Flexible Base," and

13  is directed to a "monolithic suction cup mounting platform."  ('861 Patent, Abstract).[1]  In

14  common parlance, the '861 Patent claims as an invention a certain type of flat platform device to

15  which a suction cup can be attached.  The claimed device contains flexible legs with an adhesive

16  backing that can stick to a near-flat surface, such as a car dashboard or window, and a rib or ribs

17  between the "mounting plate" and the skirt portion from which the legs protrude.  The patent

18  does not cover *any* suction cup mounting platform or disc with adhesive backing or flexible legs.

19  It is instead limited to a configuration of structural elements that make up the device, including a

20  rib or ribs joined between the mounting plate and the skirt portion, as the inventor claimed in the

21  '861 Patent and explained in its specification and prosecution history.

22        The claims of the '861 Patent correspond to Figures 14-21.  Those figures, which Belkin

23  shades here for the Court's convenience, demonstrate the key elements of the "suction cup

24  mounting platform" claimed in the '861 Patent:

25

26      [1] A copy of the '861 Patent is attached to the Declaration of Lane M. Polozola as Exhibit A. Attached as
Exhibit B is a copy of the '861 Patent's complete file history, in continuously paginated form.  Citations herein refer
to those Exhibits unless otherwise noted.

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 2
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000



_Fig. 15_

_Fig. 18_

First, as those figures demonstrate, the mounting platform includes on top a "substantially monolithic mounting plate **11** having first and second opposing faces **13** and **15**" (*i.e.*, top and bottom sides). That is the part upon which a suction cup can be connected. Second, the bottom of the device has a base or skirt portion and "a plurality of "flexible leg portions **121**" that extend "substantially radially outwardly from a position adjacent to a center of the second face **15**." (*See* '861 Patent, col. 8:55-9:67.) That base and leg portion has an adhesive backing so that it can stick to a near-flat surface, such as a car dashboard or window, as illustrated in Fig. 18.

Third, the device contains a "post or stem **129**" (shown in blue above) that projects "substantially central of the second face **15**." ('861 Patent at 8:55-9:67) (emphasis added). This "post or stem **129**," which the claims refer to as a "stand-off" or "spacer," separates the top mounting plate and bottom part of the device that consists of the skirt and flexible legs.

The patent also discloses one embodiment in which the bottom part of the device blends into the spacer part. Figure 16, at right, shows the underside of one device in which the spacer **129** includes a discrete, diagonal "*flared* skirt portion **137**" on the bottom side, that blends the base portion **127** and flexible legs **121** into the tubular spacer **135**. (*Id.*, Figure 16).



_Fig. 16_

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 3

LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Fourth, the patent discloses that the device has discrete "ribs."  As the specification explains "a stabilizer **141** is formed as a plurality of gussets or ribs (shown in red here) joined between the second face **15** of the mounting plate **11** and the flared skirt portion **137**[.]"



(*Id*. at 10:21-26).  The "ribs" (**141**) are separate structures from the "post or stem **129**," as the patent's description, figures, and claims indicate.  (*See id.* Figs. 15, 18, and 20; *see also* Section II.B, *supra* (identifying where in prosecution history applicant specifically defined invention in claims as including the "ribs" disclosed as "**141**" and the "stand-off" and "spacer" as being the "post or stem **129**").

### B.      The Claims Distinguish the Spacer from the Ribs

The claims of the '861 patent also describe these four components in a specific arrangement and distinguish the spacer from the ribs.  In particular, numerous claims require a "stand-off" (claims 2-3) or "spacer" (claims 7-8, 12-13) that corresponds to the "post or stem **129**."  Claim 7 requires, for example, requires a "tubular spacer" and a rib.  That claim reads:

> 7. A suction cup mounting platform, the mounting platform comprising:
>
> > a substantially rigid monolithic plate having first and second opposing faces;
> >
> > a substantially smooth and planar surface formed on the first face;
> >
> > a plurality of radially extended and substantially flexible leg members spaced away from the plate at a central portion of the second face thereof, each of the leg members having a bonding surface facing away from the plate;
> >
> > a substantially tubular *spacer* coupled between the leg members and the plate adjacent to the central portion of the second face thereof, wherein the spacer further comprises a terminal skirt portion distal from the second face of the plate and having the leg members extended therefrom;
> >
> > a rib joined between the plate at the second face thereof and the terminal skirt portion; and
> >
> > a pressure sensitive adhesive coupled to the bonding surface of each leg member.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    ('861 Patent., Claim 7 (emphasis added); *see also* Claims 8, 12, 13 (referring to "the spacer")).

2    Likewise, claim 2, which depends from claim 1, requires a "stand-off" that separates the

3    mounting plate above and the skirt portion below, from which the flexible legs protrude.  Claim

4    2 reads:

5          2. The mounting platform of claim 1, further comprising *a stand-*
             *off* coupled to the second face of the plate adjacent to a center

6          portion thereof, the stand-off further comprising the skirt portion
             adjacent to an end portion thereof distal from the plate; and

7          wherein the plurality of the legs is further projected substantially
             radially outwardly of the skirt portion of the stand-off.

8

9    (*Id.*, Claim 2) (emphasis added).  Dependent claim 3 further requires that the stand-off "further

10   comprises a tube portion being substantially hollow at least adjacent to the skirt portion of the

11   stand-off."  (*Id.*, Claim 3).  The "stand-off" and "spacer" identified in the claims correspond to

12   the "post or stem **129**" disclosed in the specifications and in Figures 15, 18, and 20.  (*See id.*; *see*

13   Section II.B *supra*).

14         Separately, the claims each require or depend from claims that require a "rib" or

15   "plurality of ribs" that are "joined between" the mounting plate and the "skirt portion" (or some

16   other component, like the spacer).  Indeed, the claims repeatedly distinguish between ribs, the

17   stand-off/spacer, the mounting plate, and a skirt portion.  For example, claim 13 requires (in part)

18   a "rib joined between  the flared skirt portion and at least one of the spacer and the second face

19   of the plate."  (*Id.*, Claim 13).  That single claim limitation thus requires a rib, a spacer, a flared

20   skirt portion, and mounting plate in a particular arrangement.  Claim 7, noted above, similarly

21   requires a "rib joined between the plate at the second face thereof and the terminal skirt portion,"

22   in addition to the spacer between the mounting plate and skirt portion from which the legs

23   protrude.  (*Id.*, Claim 7).  That claim, too, recites a particular arrangement of a mounting plate,

24   spacer, skirt portion, and a separate rib.

25         Likewise, claim 1 recites a mounting platform with "a rib joined between the second face

26   of the plate and the skirt portion," and claim 2, which depends from claim 1, adds a separate

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 5
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  "stand-off" coupled to the mounting plate.  (*Id.*, Claims 1-2).  All other claims are similar in

2  nature.  (*See* Claim 6 (requiring a "rib joined between the second face of the plate and the skirt

3  portion," with "the rib being joined between the second face of the plate and the skirt portion

4  adjacent to one of the openings."); Claim 12 (requiring a "plurality of ribs joined between the

5  plate at the second face thereof and the terminal skirt portion adjacent to different ones of the

6  openings."); *accord* Claim 16).

7      Altogether, the claims make clear that a "rib" is a separate structure from the mounting

8  plate, stand-off/spacer, and skirt portions.

9  **C.    The Prosecution History Confirms That the Ribs Are Not the Same Structure**
   **as the Spacer**

10

11      The '861 Patent issued only after numerous rejections by the USPTO and after the

    original claims were narrowed in scope.  The original claims, 1-20, were part of an application

12  filed in January 2008.  (*See* Ex. B at 221-39).  As relevant here, original claim 1 covered a

13  suction cup mounting platform including a rigid plate with two faces; a "mounting surface" on

14  the first face; at least one flexible leg with a bonding surface; and a bonding agent.  (*Id.* at 237).

15  Other independent claims, such as original claims 10 and 16, were similarly broad and lacked

16  any "rib" or "stabilizer" limitation.  (*Id.* at 238-39).  Certain claims included a "stand-off" or

17  "spacer" (claims 4-5, 11-13, 16), and only dependent claims required a separate "stabilizer" and

18  "ribs." (claims 9, 17, 20).  (*Id.*)

19      All original claims were subject to a restriction requirement in February 2010 because the

20  application contained claims directed to multiple "patentably distinct species."  (*Id.* at 201-05).

21  In response, the applicant restricted prosecution to "Species II, shown in Figures 14-21," and

22  explained that "claims 1-20 [are] all directed to the Species II, for prosecution on the merits in

23  the present application."  (*Id.*).  Thereafter, the original claims 1-20 were further rejected on

24  multiple occasions and on multiple grounds, including rejections of certain claims under 35

25  U.S.C. § 103 as obvious over certain prior art references.  NPI  amended the claims in attempts

26

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 6
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    to overcome these rejections, but in April 2011, the examiner issued a non-final rejection by

2    which *only* claim 20 was held to be allowable if "rewritten in independent form including all of

3    the limitations of the base claim and any intervening claims." (*Id.* at 125). Claim 20, at that

4    time, was a dependent claim that added to the base claims (16-19) a "stabilizer" that comprises a

5    "*plurality of ribs*" in a specific location. (*Id.* at 133). That is, the Examiner said that one claim

6    was allowable if it was redrafted to include *all* structures claimed in the base claims, *including*

7    *ribs*.

8         NPI then amended all independent claims to include a "rib" or "plurality of ribs," along

9    with the other structures suggested by the Examiner. (*See id.* at 103-07). The Examiner

10   nonetheless issued a Final Rejection (at 91) of certain claims, and thereafter, NPI again amended

11   the claims in February 2012. In that series of amendments, all independent claims retained the

12   limitation of having a "rib" or ribs," and certain claims separately included a "stand-off" or

13   "spacer." (*See id.* at 68-71).

14        In a subsequent appeal brief filed in December 2012, which challenged the Examiner's

15   finding that the applicant abandoned the application due to an untimely filing, the applicant

16   explicitly defined the "invention" of each claim to the USPTO. As relevant here, the NPI stated

17   that the invention of dependent claim 2 includes a "stand-off," which is the "post or stem **129**"

18   identified in the specification. (*See id.* at 35 ("The invention of dependent Claim 2 as amended

19   … is the mounting platform (1) of allowable base claim (8), further comprising a stand-off (post

20   or stem **129**) … wherein the plurality of the legs (**121**) is further projected substantially radially

21   outwardly of the skirt portion (**137**) of the stand-off (**129**)." (emphasis added; citing, *inter alia*,

22   Figures 15, 18, 20))). The applicant likewise defined the invention of other claims as including a

23   "spacer," which was specifically identified as "the spacer (129)." (*Id.* at 37-39). In the same

24   appeal brief, the applicant separately explained that the invention of then-claim 8 (now claim 1)

25   included a "rib," which was defined as "a rib (141)." (*Id.* at 36). The "rib" in all other claims

26   were similarly defined. That is, in trying to avoid a finding of abandonment of the application,

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 7
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

NPI's appeal brief identified the specific structures labeled with the number **141** in the figures above as "ribs." (*Id.* at 36 (4) (citing Figures 14, 15, 16); *see also id.* at 36-39 (similarly identifying "rib" or "ribs" as "(141)" with regard to other claims)).

### III.    THE APPLICABLE LAW FAVORS BELKIN'S PATENT-CENTERED APPROACH

As the Court knows, in construing claims, "[t]he words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).   The most important part of *Phillips* for this case is its emphasis on the claims themselves as a source of meaning, particularly as to the surrounding claims. *Id.* at 1314 (explaining that "the claims themselves provide substantial guidance as to the meaning of particular claim terms").   "Other claims in the patent, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.*   Indeed, claim terms are "normally used consistently throughout the patent" such that "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* (citations omitted).   "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id.* (citation omitted).

Two claim construction doctrines related to *Phillips* are also relevant here.   First, where a claim includes two separate components, the components should be construed as distinct structures. *Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254-56 (Fed. Cir. 2010) ("Where a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention.") (quotations omitted); *see Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996) (concluding that where a claim provides for two separate elements, a "second portion" and a "return portion," these two elements "logically cannot be one and the same"); *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of

BELKIN'S OPENING CLAIM CONSTRUCTION BRIEF (NO. 2:16-CV-00402-TSZ) – 8

LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  any evidence to the contrary, we must presume that the use of ... different terms in the claims

2  connotes different meanings."). To do otherwise would improperly read limitations out of the

3  claims. *See Becton*, 616 F.3d at 1257. Second, a "claim term should be construed consistently

4  with its appearance in other places in the same claim or in other claims of the same patent."

5  *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *see Southwall Techs.,*

6  *Inc. v. Cardinal IG Co*., 54 F.3d 1570, 1579 (Fed. Cir. 1995) (holding that claim terms found in

7  different claims should be interpreted consistently).

8  The foregoing principles support Belkin's proposed constructions.

9  **IV.   BELKIN'S CONSTRUCTIONS ARE CORRECT**

10  **A.   "Stand-off" (Claims 2-3) / "Spacer" (Claims 7, 8, 10, 11, 12)**[2]

| NPI's Proposed Construction | Belkin's Proposed Construction |
|---|---|
| "a piece of material used to create space between two things" | "spacer that projects substantially perpendicularly from the second face of the mounting plate and separates the mounting plate from the base" |

16  The terms "stand-off" and "spacer" should be construed using Belkin's proposal because

17  this is how a person of ordinary skill in the art would have understood the phrase in the context

18  of the claims and specification of the '861 Patent at the time of the invention. Indeed, the claims,

19  specification, and applicant's own description of the invention makes clear that "stand-off" and

20  "spacer" refer to the "post or stem **129**" disclosed in the specification, which, as Belkin proposes,

21  constitutes a "spacer that projects substantially perpendicularly from the second face of the

22  mounting plate and separates the mounting plate from the base." NPI's proposed construction,

23

24

---

25  [2] Belkin briefs these terms together because Belkin and NPI each propose the same definition for each term, and the '861 Patent appears to use the terms interchangeably. Belkin's original proposed construction for each

26  further included the disclaimer, "To the extent it can be construed." Belkin herein agrees that the terms can be construed in light of the '861 Patent's claims, specification, and prosecution history.

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 9
LEGAL134750894.4

1  on the other hand, is overbroad and conflicts with the language of the claims, specification, and

2  prosecution history.

3       As a preliminary matter, Belkin notes that these terms are contained in asserted claims

4  that NPI recently proposed to drop in its pending motion for leave to amend its infringement

5  contentions.  (*See* Dkt. No. 25 at 2).  Belkin briefs them here, however, because they remain

6  relevant.  First, NPI has not affirmatively dropped all claims other than claims 1 and 4-6, as its

7  motion to amend proposes; NPI instead says it will drop those claims *if* the Court grants it leave

8  to abandon its original infringement theories and provide amended contentions.  (*See id.* at 2

9  ("As part of that amendment, NPI *would reduce* the number of claims…")).  The originally

10  asserted claims, and the terms "stand-off" and "spacer" therein, thus remain at issue.  Second,

11  even if NPI does affirmatively drop all claims that contain the "spacer" and "stand-off"

12  limitations, the scope of the terms "stand-off" and "spacer" remain central to the parties' dispute.

13  Those structures are separate, discrete structures from the "ribs" recited in all independent

14  claims.  Under governing law, "ribs" cannot be construed to cover the "stand-off" or "spacer"

15  structures.  *See Becton*, 616 F.3d at 1254-56.  The scope of the latter terms thus remains relevant.

16       The currently asserted claims refer to a "stand-off" and "spacer," and provide context that

17  supports Belkin's proposed construction.  For example, claim 2 includes a "stand-off" that is

18  "coupled to the second face of the plate adjacent to a center portion thereof[.]"  ('861 Patent,

19  Claim 2).  Similarly, a substantially tubular "spacer" is required by claim 7, which recites such a

20  spacer "coupled between the leg members and the plate adjacent to the central portion of the

21  second face thereof" with a terminal skirt portion on the side opposite the mounting plate, as well

22  as a separate "rib" structure.  (*Id.*, Claim 7).  Claim 13, too, recites a "spacer portion projected

23  from a central portion of the second face" with a flared skirt portion on the side opposite the

24  mounting plate, separate and distinct from a "rib" joined between the flared skirt portion and one

25  of the spacer or mounting plate.  (*Id.*, Claim 13).  The use of "stand-off" and "spacer" with

26  language that those structures project from, or are coupled to, the mounting plate at a central

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 10
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

location with the base skirt portion opposite the mounting plate show that they are spacers that "project substantially perpendicularly from the second face of the mounting plate and separate the mounting plate from the base."

The specification further supports Belkin's construction.  While the term "stand-off" does not appear and "spacer" appears only once in the specification, the written description identifies a "post or stem **129**" that corresponds to the stand-off and spacer.  In particular, the specification explains that according to the embodiment disclosed in Figures 14-21, to which the claims correspond, the "leg portions **121** each extend substantially radially outwardly from a substantially disc-shaped base portion **127** of a post or stem **129** projected substantially central of the second face **15** of the mounting plate **11**." (*Id.*, col. 9:38-41) (emphasis added).  Elsewhere, the specification repeatedly refers to the "post or stem **129**" or the "stem **129**."  (*See*, *e.g.*, *id.*, col. 9:55-67 (discussing "the stem **129**" as configured as having a "thin-walled hollow substantially cylindrical tube portion **135**…"); *id.*, col. 10:1-20 (discussing "stem **129**" and various shapes of skirt portion).  Where the specification does use the term "spacer," it is with language substantially identical to that describing the "post or stem **129**"—the patent states in the "summary of the invention" that according to one aspect of the invention, the legs are "spaced away from the mounting plate by a hollow tubular spacer" with the skirt portion on the side opposite the mounting plate.  In other words, the "spacer" is exactly what the patentee disclosed as a "post or stem **129**" and identified in Figures 15, 18, and 20.  That "spacer" or "stand-off" projects perpendicularly from the second face of the mounting plate and separates the plate from the "base" skirt portion, as Belkin's proposal reflects.

Finally, the applicant's description of the claimed invention removes all doubt that that the "post or stem **129**" from Figures 15, 18, and 20 is the "stand-off" and "spacer" in the asserted claims.  In the December 2012 Appeal Brief noted above, the applicant told the PTO that the invention of dependent claim 2 includes a "stand-off," which is the "post or stem 129" identified in the specification.  (*See* Ex. B at 35 ("The invention of dependent Claim 2 as amended … is the

mounting platform (1) of allowable base claim (8) [now claim 1], further comprising <u>a stand-off</u> <u>(post or stem 129)</u> … wherein the plurality of the legs (121) is further projected substantially radially outwardly of the skirt portion (137) of <u>the stand-off (129)</u>." (emphasis added; citing, *inter alia*, Figures 15, 18, 20)).   The applicant likewise defined the invention of other claims as including a "spacer," which was specifically identified as "the spacer (129)."  (*Id.* 36-39).

Belkin's proposed construction is consistent with the patent claims, the specification, and the prosecution history.  Such a construction will precisely define the scope of NPI's asserted claims, and ensure that a jury (or the Court on summary judgment) can determine whether Belkin's Dashboard Adapter product infringes with a clear, useful definition that is consistent with the context in which the disputed terms are used in the '861 Patent.  A construction for "stand-off" and "spacer" will further help the jury (or the Court) understand what does *not* constitute a "rib," which is separately required in the patent.

**B.**     **"Ribs" Must Be Construed to be a Separate Structure From the "Spacer"**

| NPI's Proposed Construction | Belkin's Proposed Construction |
|---|---|
| "a structure that stabilizes or supports" | No construction necessary. |

The terms "rib" and "ribs" have a plain meaning that distinguishes them from a spacer, stand-off, or other central post.  As such, the terms "rib" and "ribs" do not warrant construction. With a proper construction of "spacer" and "stand-off," the Court can let the term "ribs" hold its plain meaning, and the components will be appropriately separated.  NPI's proposed construction, however, is designed to make the "ribs" overlap—even completely—with the spacer, and should be rejected as inconsistent with the law and the patent.

NPI's proposal is contrary to the governing principles of claim construction:  That claim terms used throughout a patent should be construed consistently; that all claims, asserted and unasserted, are relevant to construction of a given term such that the meaning of  term should not render others meaningless; and that where a claim includes two separate components, they

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 12
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

should be construed as distinct components.  *Becton*, 616 F.3d at 1253-56; *see Regents of Univ. of Minn. V. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) (finding patent claims to require two physically distinct and separate disks when "the specification never teaches an embodiment constructed as a single piece" and "every single embodiment disclosed in the [asserted patent's] drawings and its written description is made up of two separate disks."); *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless).  If its construction of "rib" is adopted, NPI will be able to accuse a spacer as a rib, or part of a spacer as a rib, or any other components that "supports" any part of another component (which is almost every molecule in a mechanical device) as rib.

But such an overbroad construction is not supported by the patent or file history. Foremost, it is directly contrary to the patent claims and the *Becton* case.  Claim 13 requires:

> "…a rib joined between the flared skirt portion and at least one of the spacer and the second face of the plate."

('861 Patent, Claim 13; *see also id.*, Claim 7 (requiring "rib" and "spacer" as separate limitations).  That is, claim 13 expressly requires that a "rib" is something that can be "joined between" the spacer and other components.  Others, like claim 7, similarly recite the "rib" and "spacer" as separately claimed structures in the same claim.  The *Becton* case, meanwhile, requires that terms, such as "rib," that are claimed to be separated from, or "connected to," other components, must be construed in a manner that keeps them separate.  *Becton,* 415 F.3d at 1254 (explaining that where claim listed four separate elements, including a "3) hinged arm" and a "4) spring means 'connected to' the hinged arm," the language unequivocally required two separate components: a "spring means that is separate from the hinged arm").  This alone is fatal to NPI's construction, which could result in the "ribs" and the "spacer" being a single structure.

But the specification also contradicts NPI's position.  The specification discloses a "rib" or "plurality of ribs" as something *connected to the stem*: "stabilizer **141** is formed as a plurality

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 13
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   of gussets or ribs joined between the second face **15** of the mounting plate **11** and the flared skirt

2   portion **137** of *the stem 129*." ('861 Patent, 10:21-26 (emphasis added); *see also id.*, at 11:4-8

3   (the mounting plate "stabilized by the gussets 141 …")).  The drawings show ribs as the

4   structures labeled at **141** in the figures above.  Those figures correspond to the well-understood

5   meaning of "ribs"—they are thin structures protruding outward to provide support.  Nowhere in

6   the specification or claims, however, is there any indication that a "rib" or "ribs" means *any*

7   structure that offers *any* stabilization or support *anywhere* on the device, regardless of shape,

8   design, or structure.  Nothing in the patent supports NPI's argument that a "rib" can be the

9   circular tube that separates the top plate from the bottom of the device, because that component

10  is described in the patent as the spacer, post, or stem, in unambiguous terms.

11       The prosecution history also undermines NPI's proposed construction.  Were there any

12  doubts that "rib" or "ribs" refer to the specific structures disclosed in the specification and

13  figures at **141**—*i.e.*, the straight-line structure that protrude out between the mounting plate on

14  top and the skirt portion on bottom—the applicant's characterization of his invention on a claim-

15  by-claim basis removes them.  In an Appeal Brief in December 2012, the applicant particularly

16  pointed out what constituted the "invention" of each claim.  For claims including a "rib" or

17  "plurality of ribs," the applicant identified the rib as "rib 141"—*i.e.*, the specific structure(s)

18  identified with the number **141** in the figures above.  (Ex. B at 36-39)  The applicant further

19  cited only Figures 14, 15, and 16 in support, further solidifying what meaning "rib" should be

20  accorded in the claims.  (*See id.* (citing Figures 14, 15, 16)).

21       Finally, NPI's "extrinsic evidence" offers no support for its overbroad construction.  NPI

22  cites partial definitions from three dictionaries:

- **The American Heritage College Dictionary (4th ed. 2007)** ("rib" *n.* 2. A part or piece similar to a rib and serving to shape or support: *the rib of an umbrella. tr.v.* 1. To shape, support, or provide with a rib or ribs.")

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 14
LEGAL134750894.4

- **Webster's New College Dictionary (3rd ed. 2008)** ("rib" *n*. 2. A part or piece serving to shape or support <the ribs of an umbrella> *vt*. 1. To support, shape, or provide with a rib or ribs.)

- **Illustrated Dictionary of Mechanical Engineering** (2015) ("rib" a reinforcing section of the part.)

(*See* Ex. C).  As a preliminary matter, NPI omits the full definition from the American Heritage College and Webster's dictionaries.  Those both contain a first definition for rib that refers to the general shape of human ribs ("long, curved bones"); in the American Heritage College Dictionary's second definition, which NPI relies upon, the meaning is explained with regard to that general shape ("a part or piece similar to a rib").  Both the American Heritage and Webster's dictionaries further provide an example of "ribs" by referring to "the ribs of an umbrella."  These definitions do not show that a "rib" is simply any structure that supports another structure, regardless of shape or design, much less a "post or stem"-like structure.  If anything, they support Belkin's plain meaning position that a "rib" is a narrow piece that protrudes from a center support.  In the umbrella example above, the ribs are the pieces that protrude from the shaft, but are not the same thing as the shaft.

Simply put, a construction of "rib" so broad that it can be read to encompass the "spacer" required in the claims (and described as the "post or stem" in the specification) is unreasonable. Such a construction would effectively read out the "stand-off" and "spacer" limitations of multiple claims, impermissibly broadening the scope of the claimed invention. *See Becton*, 616 F.3d at 1256 (rejecting construction that would render a claim limitation meaningless). Because the "rib" or "ribs" limitations had to be included in every independent claim to overcome prior art rejections, allowing NPI to construe the claims in a way that effectively removes those limitations would provide NPI with patent rights to which it was never entitled.  The Court should reject NPI's proposed construction.

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 15
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

C.     "Joined Between"

2

| NPI's Proposed Construction | Belkin's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "touching both" |

Finally, the phrase "joined between" should be construed as "touching both" because this is how a person of ordinary skill in the art would have understood the phrase in the context of the claims and specification of the '861 Patent at the time of the invention.  NPI argues that this phrase should be given a "plain and ordinary meaning" but does not identify what that meaning is.  The reason is that NPI has accused Belkin's *original* Dashboard Adapter of infringement by accusing structures *inside* the alleged "stand-off" as a "rib."  Those structures, even if deemed "ribs," are not "joined between" the mounting plate on top and the skirt portion on bottom, as required by the asserted claims.  By refusing to give "joined between" the meaning that is obvious from the '861 Patent and asserted claims—that the "ribs" must be *touching both* the mounting plate on top and a specific skirt portion on bottom, and thus located in a particular location—NPI attempts to evade the limitations of the '861 Patent's claims.

Belkin's proposed construction is supported by the '861 Patent claims and specification.  In particular, the claim limitations at issue require a "rib joined between the second face of the plate and the skirt portion [or terminal skirt portion]" (claims 1, 6, 7) or a "plurality of ribs joined between the plate at the second face thereof and the terminal [or flared] skirt portion adjacent to different ones of the openings [between the legs]" (claim 12, 16).  The specification, as noted above, specifically states that "a stabilizer **141** is formed as a plurality of gussets or ribs joined between the second face **15** of the mounting plate **11** and the flared skirt portion **137** of the stem **129**.")  ('861 Patent, col. 10:21-26).  The phrase "joined between" appears nowhere else in the specification.  That single reference, however, refers particularly to Figure 15 and the "ribs" disclosed therein—which are plainly "touching both" the mounting plate on top and the skirt portion on bottom.  In fact, there is no other indication in the patent or prosecution history of

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 16
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

how else the rib could be "joined between" other structures other than "touching both."  Any
other construction that focuses only on the words "between" (*e.g.*, allowing two components to
be positions between others without touching them) would read the word "joined" out of the
phrase "joined between."  Any such construction would be improper.  *See*, *e.g.*, *Becton*, 616 F.3d
at 1257 ("If the spring means limitation … is not to be read out of the asserted claims, it must
require an additional element beyond that which is already called for by the hinged arm
limitation."); *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to
adopt a claim construction which would render a claim limitation meaningless).  Thus, "joined
between" should be construed as "touching both."

## V.     CONCLUSION

For the reasons explained herein, the Court should adopt Belkin's proposed constructions
for the terms that warrant construction.  These proposals are consistent with the '861 Patent's
claims, specification, and prosecution history.  And importantly, they will avoid constructions
that render claim limitations meaningless and, instead, properly limit the scope of the claims to
that which the inventor appears to have in fact invented and claimed.

DATED:  March 24, 2017

By: */s/  Ryan J. McBrayer*
Ryan J. McBrayer, WSBA No. 28338
Lane M. Polozola, WSBA No. 50138
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000
Email: RMcBrayer@perkinscoie.com
Email: LPolozola@perkinscoie.com

*Attorneys for Defendant BELKIN
INTERNATIONAL, INC.*

BELKIN'S OPENING CLAIM
CONSTRUCTION BRIEF (NO. 2:16-CV-
00402-TSZ) – 17
LEGAL134750894.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on March 24, 2016, I caused the forgoing to be electronically filed

3   with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4   to all counsel of record for the Parties in the above-captioned litigation.

5

6                                  */s/ Lane M. Polozola*
                                 Lane M. Polozola, WSBA No. 50138

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – 1

LEGAL134750894.4