1                               HONORABLE THOMAS S. ZILLY

2

3

4

5

6

7                   UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF WASHINGTON

8                          AT SEATTLE

9 NATIONAL PRODUCTS INC.,          |   Case No. 2:16-cv-00402-TSZ

10            Plaintiff,            |

11     v.                          |   **NATIONAL PRODUCTS INC.'S
OPENING CLAIM CONSTRUCTION
BRIEF**

12 BELKIN INTERNATIONAL, INC.,       |

13            Defendant.         |   **Due Date: April 14, 2017**

14                                 **JURY TRIAL DEMANDED**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF CONTENTS

3

Page

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................... 1

III.  LEVEL OF ORDINARY SKILL IN THE ART ........................................... 3

IV.   THE ASSERTED CLAIMS ........................................................................... 3

V.    CLAIM CONSTRUCTION PRINCIPLES .................................................. 4

VI.   DISPUTED CLAIM TERMS ......................................................................... 4

      A.    "rib" (claims 1, 6, 7, 12, 16) ............................................................. 4

      B.    "joined between" (claims 1, 6, 7, 12, 16) ........................................ 7

      C.    "stand-off" (claims 2, 3) and "spacer" (claims 7, 8, 10, 12) ........ 10

VII.  CONCLUSION ............................................................................................... 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 2:16-cv-00402-TSZ

- i -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*,
5
    657 F.3d 1264 (Fed. Cir. 2011)................................................................14

6

*Baran v. Med. Device Techs., Inc.*,
    616 F.3d 1309 (Fed. Cir. 2010)................................................................10
7

*Clare v. Chrysler Grp. LLC*,
8
    819 F.3d 1323 (Fed. Cir. 2016)................................................................14

9

*E-Pass Techs., Inc. v. 3Com Corp.*,
    343 F.3d 1364 (Fed. Cir. 2003)..................................................................9
10

11

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009).........................................................11, 12
12

*G3 Genuine Guide Gear Inc. v. Marker Deutschland GmbH*,
13
    No. 2:15-cv-561-TSZ, 2016 WL 4473120 (W.D. Wash. Aug. 25, 2016)
    (Zilly, J.)..................................................................................................8
14

*Gart v. Logitech, Inc.*,
15
    254 F.3d 1334 (Fed. Cir. 2001)...........................................................8, 13

16

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014)................................................................13
17

18

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)...................................................................8

19

*Markman v. Westview Instruments, Inc.*,
20
    52 F.3d 967 (Fed. Cir. 1995).....................................................................4

21

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)..............................................4, 10
22

23

*Smart Skins LLC v. Microsoft Corp.*,
    Claim Construction Order, No. 2:15-cv-544 (W.D. Wash. Dec. 22, 2015),
24
    ECF No. 84 (Pechman, J.) ........................................................................8

25

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)..................................................................7
26

27

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)....................................................................4

28

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF    - ii -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

**TABLE OF AUTHORITIES**
(continued)

Page(s)

RULES

Local Patent Rule 134.................................................................................................1

OTHER AUTHORITIES

American Heritage College Dictionary (4th ed. 2007)................................................12

American Heritage Dictionary (4th ed. 2007) ...........................................................7

Illustrated Dictionary of Mechanical Engineering (2015)..........................................7

McGraw-Hill Dictionary of Engineering (2nd ed. 2003) ...........................................12

Webster's New College Dictionary (3rd ed. 2008) ................................................7, 12

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 2:16-cv-00402-TSZ

- iii -

1        Pursuant to the Court's Minute Order dated October 27, 2016 (Dkt. No. 20) and Local

2 Patent Rule 134, plaintiff National Products Inc. ("NPI") submits its opening brief regarding

3 construction of the disputed claim terms identified in the parties' Joint Claim Construction and

4 Prehearing Statement (Dkt. No. 23).

5 **I.**     **INTRODUCTION**

6        NPI asserts one patent in this action: U.S. Patent No. 8,505,861 ("the '861 patent"). The

7 parties dispute the meaning of four claim terms from the '861 patent. Because NPI's proposed

8 constructions of these terms are consistent with the claim language, specification, and

9 prosecution history of the '861 patent, and are supported by extrinsic evidence, the Court should

10 adopt NPI's constructions.

11        On March 16, 2017, NPI filed a Motion for Leave to Amend Its Preliminary Infringement

12 Contentions. Dkt. No. 24. As part of that proposed amendment, NPI would reduce the number

13 of claims asserted in this case by dropping its assertion of eight claims, and asserting only claims

14 1 and 4–6 of the '861 patent. As two of the four disputed claim terms do not appear in claims 1

15 or 4–6, if NPI's motion is granted only two claim terms ("rib" and "joined between") will remain

16 for the Court to construe.

17 **II.**     **BACKGROUND**

18        The '861 patent is directed to mounting platforms for attaching suction cups. Entitled

19 "Suction Cup Mounting Platform Having Flexible Base," the '861 patent was filed on January 2,

20 2008 and issued on August 13, 2013. Declaration of Elizabeth B. Hagan in Support of National

21 Products Inc.'s Opening Claim Construction Brief ("Hagan Decl."), Ex. A ('861 patent) at cover.

22 It generally describes and claims a mounting platform comprising a plate and one or more

23 flexible legs coupled to the plate. These components allow the mounting platform to conform

24 securely to a variety of planar and non-planar surfaces.

25        Figures 14 and 15 of the '861 patent, below, show an embodiment of the mounting

26 platform claimed in the '861 patent. The mounting platform includes plate 11 that has a first

27 face 13 and a second face 15. *Id.* at 8:55-59. The first face 13 forms a surface 17 onto which a

28

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF        - 1 -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

suction cup can be attached. *Id.* at 8:59-61. As described in the specification, the suction cup may be part of a mounting device to securely hold, for example, a portable electronic device, particularly in a car. *Id.* at 1:19-21.



**Figures 14 and 15 from the '861 Patent**

The second face 15 is coupled to one or more flexible leg portions 121 that extend outwardly from the center of plate 11. *Id.* at 9:25-32. Specifically, as shown in Figure 16 of the '861 patent at right, the leg portions 121 may extend outwardly from a skirt portion 137, which in turn is coupled to the second face 15 of plate 11. The leg portions 121 include a bonding surface facing away from the second



**Figure 16 from the '861 Patent**

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF                    - 2 -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1  face 15 of the plate 11.  *Id.* at 9:32-34.  The bonding surface is capable of mounting onto a target

2  surface, such as a vehicle door, console, or dashboard.  *Id.* at 9:19-23, 9:34-37.

3      To provide support, the mounting platform may also include a stabilizer.  *Id.* at 10:21-24.

4  The stabilizer, also referred to as ribs or gussets, serves to "stabilize the mounting plate 11."  *Id.*

5  **III.   LEVEL OF ORDINARY SKILL IN THE ART**

6      A person of ordinary skill in the art of the invention claimed in the '861 patent is an

7  engineer or a product designer with at least six years of experience with mechanical design and

8  manufacture, obtained through vocational studies, from working in the mechanical arts, or a

9  combination of both.

10  **IV.   THE ASSERTED CLAIMS**

11      NPI asserts claims 1-9, 11, 12, and 16 of the '861 patent,[1] of which claims 1, 6, and 7 are

12  independent claims.  Claim 1 is representative:

13      1.   A suction cup mounting platform, the mounting platform comprising:

14          a substantially rigid plate having first and second opposing faces;

15          a suction cup mounting surface formed on the first face of the plate;

16          a skirt portion coupled to the second face of the plate;

17          a plurality of flexible legs coupled to the skirt portion and having a
        bonding surface facing away from the plate;

18          a rib joined between the second face of the plate and the skirt portion; and

19          a bonding agent adhered to the bonding surface of the plurality of flexible
        legs.

20  *Id.* at 11:50-62.  Independent claim 7 further recites "a substantially tubular spacer coupled

21  between the leg members and the plate adjacent to the central portion of the second face thereof,

22  wherein the spacer further comprises [the] terminal skirt portion distal from the second face of

23  the plate and having the leg members extended therefrom."  *Id.* at 12:43-48.   Asserted claims 2-

24

25

26  _____

27  [1] If the Court grants NPI's pending Motion for Leave to Amend Its Preliminary Infringement
   Contentions (Dkt. No. 24), only claims 1 and 4-6 will be at issue.

28
NPI'S OPENING CLAIM
CONSTRUCTION BRIEF                           - 3 -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1   5, 8-9, 11, 12, and 16 are dependent claims and add additional limitations regarding the

2   placement and surface of the flexible legs.  *Id.* at 11:63-14:19.

3   **V.   CLAIM CONSTRUCTION PRINCIPLES**

4          Claim construction is a matter of law exclusively for the Court.  *Markman v. Westview*

5   *Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995).  Courts interpret claims and their terms as

6   they would have been understood by a person of ordinary skill in the art at the time of the

7   invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

8   "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in

9   the context of the particular claim in which the disputed term appears, but in the context of the

10  entire patent, including the specification."  *Id.*  In addition to the specification, as part of the

11  "intrinsic evidence" the Court should consider the prosecution history of the patents, which

12  "consists of the complete record of the proceedings before the PTO and includes the prior art

13  cited during the examination of the patent."  *Id.* at 1317.  Extrinsic evidence, such as dictionary

14  definitions, may be helpful to a proper understanding of the term.  Usually, however, "an

15  analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term."

16  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

17  **VI.   DISPUTED CLAIM TERMS**

18         The parties dispute only four claim terms: "rib," "joined between," "stand-off," and

19  "spacer."[2]  For the reasons that follow, the Court should adopt NPI's proposed constructions.

20         **A.     "rib" (claims 1, 6, 7, 12, 16)**

| NPI's Proposal | Belkin's Proposal |
|---|---|
| "a structure that stabilizes or supports" | Plain and ordinary meaning. |

24         The '861 patent claims a suction cup mounting platform with (1) a substantially rigid

25  plate with two opposing faces; (2) a skirt portion coupled to the second face of the plate; (3) a

---

26  [2] Only the terms "rib" and "joined between" will remain in dispute if the Court grants NPI's

27  pending Motion for Leave to Amend Its Preliminary Infringement Contentions (Dkt. No. 24).

28

plurality of flexible legs coupled to the skirt portion; (4) an adhesive or bonding agent on the surface of the legs facing away from the plate; and (5) "a rib joined between the second face of the plate and the skirt portion."  Hagan Decl., Ex. A ('861 patent) at claim 1.[3]  The "rib" is a part of the claimed mounting platform that stabilizes or supports the platform.

The specification consistently describes the rib as a "stabilizer":

> Optionally, a **stabilizer 141 is formed as a plurality of gussets or ribs** joined between the second face 15 of the mounting plate 11 and the flared skirt portion 137 of the stem 129.  The gussets **141 stabilize** the mounting plate 11 relative to the stem 129 when the leg portions 121 are bonded to the target mounting surface S.

*Id.* at 10:21-26 (emphases added).  The "gussets **or ribs**" are described as having the function of "**stabiliz[ing]** the mounting plate."  *Id.* (emphases added).  The only other portion of the specification referring to ribs or gussets similarly describes them as stabilizing—i.e., providing structural support for—the mounting plate:  "Thereafter, the alternative suction cup mounting platform 1 is effectively bonded to the selected target mounting surface S with the **monolithic mounting plate 11 stabilized by the gussets 141** and the suction cup mounting surface 17 presented on the first face 13 thereof."  *Id.* at 11:4-8 (emphasis added).  The specification and drawings further make clear that the rib is a structure.  *Id.* at 10:21-26 (the "stabilizer 141 is formed as a plurality of . . . ribs"); *id.* at Fig. 15 (pointing out a structure associated with the stabilizer 141).  Accordingly, the specification requires that the rib be a structure that stabilizes or supports.

The prosecution history of the '861 patent is also consistent with NPI's proposed construction.  Original claim 17 recited "a stabilizer joining the plate portion with the flared skirt portion," and original claim 20, depending from claim 17, further limited that stabilizer, describing it as comprising "a plurality of ribs joined between the second face of the plate and

---

[3] All claims recite a rib joined between the second face of the plate and the skirt portion of the mounting platform.  *See* '861 patent at claims 1 and 6 ("a rib joined between the second face of the plate and the skirt portion"); *id.* at claim 7 ("a rib joined between the plate at the second face thereof and the terminal skirt portion"); *id.* at claim 13 ("a rib joined between the flared skirt portion and at least one of the spacer and the second face of the plate").

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF                              - 5 -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1   the flared skirt portion."[4]

2   Hagan Decl., Ex. B (Listing

3   of Claims dated February

4   22, 2011) at 4.  That is, the

5   original claims, like the

6   specification, specified that

7   the rib is a type of

8   stabilizer.  Indeed, the

9   applicants did not disagree

10  when the examiner reached



**Figure 3 from U.S. Patent No. 5,743,505 to Sophy**

11  the same conclusion.  In rejecting claim 17, from which claim 20 was based, the examiner relied

12  on U.S. Patent No. 5,743,505 issued to Sophy, which "teaches a base with a plurality of

13  structural ribs (30) to enhance the structural rigidity of the base."  *Id.*, Ex. C (Office Action dated

14  April 28, 2011) at 10 (explaining that a person of ordinary skill in the art would have found it

15  obvious to combine a platform with a "stabilizer joining the plate portion with the flared skirt

16  portion in order to prevent the platform from structural failure").  Figure 3 of Sophy, reproduced

17  above, is illustrative, depicting a base assembly 20 with "a series of structural ribs disposed

18  below the platform 22 and connecting to the leg 24, so as to increase the rigidity of the assembly

19  20," including "an annular inner support rib 30 depending from the platform 22," an "annular

20  center support rib 32," radial support ribs 34, and skewed support ribs 36.  *Id.*, Ex. D (U.S. Patent

21  No. 5,743,505) at 3:32-64.  The applicant did not traverse this rejection or dispute the examiner's

22  conclusion that a rib is a stabilizer providing structural support.  *Id.*, Ex. E (Amendment and

23  Remarks dated July 26, 2011) at 8.

24

25

---

26  [4] The Patent Office objected to claim 20 as being dependent upon a rejected base claim, but
    stated that it would be allowable if rewritten in independent form.  *Id.*, Ex. C (Office Action

27  dated April 28, 2011) at 11.

28

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF                - 6 -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

General purpose dictionaries from the time the '861 patent was filed add further support for NPI's construction, defining "rib" as "[a] part or piece . . . serving to shape or support," and giving as an example "*the rib*[*s*] *of an umbrella*." *Id.*, Ex. J (American Heritage Dictionary (4th ed. 2007)) at definition 2 of "rib"; *id.*, Ex. K (Webster's New College Dictionary (3rd ed. 2008)) at definition 2 of "rib." The Illustrated Dictionary of Mechanical Engineering, a specialized dictionary relevant to the field of the invention of the '861 patent, defines "rib" as "a reinforcing section of the part." *Id.*, Ex. L.

Belkin proposes that plain and ordinary meaning is sufficient for the definition of "rib." But a layperson may first think of "rib" as defined in its anatomical sense. *See, e.g.*, *id.*, Exs. J & K at definition 1 of "rib" (both dictionaries defining "rib" as one of a set of bones extending from the spine toward the sternum in humans or other vertebrates). The invention of the '861 patent, however, lies in the mechanical arts—not the anatomical or biological ones. Here, the plain meaning of the claims and specification dictate that "rib" be defined in its mechanical sense: a structure that stabilizes or supports. NPI's proposed construction is consistent with this basic understanding.

B.     "joined between" (claims 1, 6, 7, 12, 16)

| NPI's Proposal | Belkin's Proposal |
|---|---|
| Plain and ordinary meaning. | "touching both" |

The term "joined between" is straightforward and carries no special meaning in the context of the '861 patent. A jury will have no trouble understanding its plain and ordinary meaning. To be joined between simply means that the referenced structure must be located between two other parts and somehow physically connected to each of them. There is no requirement that these connections be direct, without intervening parts.

No construction is necessary for this term. "Claim construction is a matter of resolution of disputed meanings and technical scope . . . .  It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). As such, this Court

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 2:16-cv-00402-TSZ

- 7 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1    has repeatedly recognized that a straightforward term carrying no specialized meaning does not

2    need to be construed.  In one recent case, for example, this Court declined to construe simple

3    terms like "upper portion" and "complete movement" because the terms are "entirely self-

4    explanatory" and the proposed constructions "merely restate[d] the claim terms using slightly

5    different sequences of the words . . . and/or their synonyms."  *G3 Genuine Guide Gear Inc. v.*

6    *Marker Deutschland GmbH*, No. 2:15-cv-561-TSZ, 2016 WL 4473120, at *9 (W.D. Wash. Aug.

7    25, 2016) (Zilly, J.).  Likewise, in *Smart Skins LLC v. Microsoft Corp.*, the Court declined to

8    construe terms that are "non-technical and have no special meaning" or for which "the jury needs

9    no help understanding this claim term."  Claim Construction Order at 7, 9, No. 2:15-cv-544

10   (W.D. Wash. Dec. 22, 2015), ECF No. 84 (Pechman, J.).  The same is true here.  "Joined

11   between" will not be technically challenging for a jury and need not be construed.

12         Belkin contends that "joined between" should be construed to require direct physical

13   contact with both parts that are being joined.  Belkin's proposed definition is contrary to the

14   term's plain meaning and its use in the specification and prosecution history.

15         The asserted claims describe a rib "joined between" a second face of a plate and a skirt

16   portion, without further elaboration as to the nature of the connections.  *See, e.g.*, Hagan Decl.,

17   Ex. A ('861 patent) at claim 1; *see supra* at 5 n.3.  Indeed, there are multiple ways in which a rib

18   could be joined between the plate and the skirt portion.  For example, the rib could be directly

19   attached to both the plate and the skirt portion.  This form of "joined between" (direct

20   attachment) is shown by the example depicted in Figure 15, above, with rib 141 attached at its

21   upper end to plate 11 and at its lower end to skirt portion 137.  But it is improper to limit a claim

22   to depicted embodiments, such as the embodiment in Figure 15, and thus "joined between"

23   should not be construed as encompassing only direct attachment, as Belkin urges this Court.  *See*

24   *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) (collecting cases and

25   holding that it is improper to limit the claims of a patent to the described embodiments); *Gart v.*

26   *Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001) ("The[] drawings are not meant to represent

27   'the' invention or to limit the scope of coverage defined by the words used in the claims

28

themselves.").  Rather, the rib could be joined to the plate and the skirt portion through

intervening components (indirect attachment).  In other words, a rib may be "joined between" the

plate and a skirt portion if it is located between them and connects them indirectly.  Similarly,

the rib could be joined between the plate and the skirt portion by connecting directly to one of

the two, and by connecting to the other through one or more intervening components.

The prosecution history confirms that "joined between" includes both direct and indirect

forms of attachment.  In an October 18, 2011 Office

Action, the examiner rejected certain claims of the '861

patent in view of U.S. Patent No. 4,309,011, a prior art

patent issued to inventor Spector.  Hagan Decl., Ex. F

(Office Action dated October 18, 2011).  The examiner

found that the Spector patent discloses "a rib (23) joined

between the second face of the plate and the skirt

portion," even though the rib is <u>not directly attached</u> to

both structures.  *Id.* at 3.  As is apparent from Spector's

Figure 5, reproduced at right, rib 23 touches only skirt

portion 22, and is connected to the second face of plate

20 by intervening portion 19.  *Id.*, Ex. G (U.S. Patent No.

4,309,011) at Fig. 5.  Notably, although the patentee



**Figure 5 from U.S. Patent No. 4,309,011 to Spector**

traversed the rejection in view of Spector on other grounds, the patentee did not dispute the

examiner's conclusion that Spector discloses this "joined between" limitation.  *See id.*, Ex. H

(Amendment and Remarks dated November 18, 2011) at 6-7.  Therefore, consistent with the

plain and ordinary meaning of "joined between," the intrinsic record confirms that the term

encompasses more than direct physical attachment.

Belkin's overly narrow construction, which requires direct physical contact (touching) of

two things (both), improperly adds limitations to the claims.  *See E-Pass Techs., Inc. v. 3Com*

*Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003) (instructing that claims should be interpreted

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 2:16-cv-00402-TSZ

- 9 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

"without unnecessarily importing limitations from the specification into the claims").  Moreover,

Belkin's proposal is contradicted by the intrinsic record.  As explained above, the examiner

identified the Spector prior art as having a rib "joined between" a plate and a skirt portion even

though rib 23 clearly does not touch the plate.  The prosecution history thus makes clear that to

be "joined between" two things does not require *touching* those two things.  Indeed, neither the

specification nor the prosecution history so much as mention the word "touch."  Belkin's

unsupported proposal requiring the rib to "touch[] both" is at odds with this intrinsic evidence

and therefore must be rejected.  *See Phillips*, 415 F.3d at 1318 (instructing courts to discount

evidence "that is clearly at odds with the claim construction mandated by the claims themselves,

the written description, and the prosecution history" (quoting *Key Pharm. v. Hercon Labs. Corp.*,

161 F.3d 709, 716 (Fed. Cir. 1998))).

The simple term "joined between" does not warrant any construction, let alone the overly

narrow construction proposed by Belkin.  Its plain and ordinary meaning should govern.

### C.    "stand-off" (claims 2, 3) and "spacer" (claims 7, 8, 10, 12)[5]

| NPI's Proposal | Belkin's Proposal |
|---|---|
| "a piece of material used to create space between two things" | To the extent it can be construed: "spacer that projects substantially perpendicularly from the second face of the mounting plate and separates the mounting plate from the base."<br><br>Belkin also proposes plain and ordinary meaning as an alternative for "spacer." |

The terms "stand-off" and "spacer" mean the same thing:  "a piece of material used to

create space between two things."

That the terms are synonymous is clear from the intrinsic record, which shows that the

applicant used the terms interchangeably.[6]  *See Baran v. Med. Device Techs., Inc.*, 616 F.3d

---

[5] These terms will not remain in dispute if the Court grants NPI's pending Motion for Leave to Amend Its Preliminary Infringement Contentions (Dkt. No. 24).

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1309, 1316 (Fed. Cir. 2010) (construing the terms "releasably" and "detachable" to have the
same meaning because the "patentee used the two terms interchangeably"); *Edwards
Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1328 (Fed. Cir. 2009) (construing various terms,
such as "graft" and "bifurcated base structure," to encompass the same properties because they
were "used interchangeably" in the specification).  For example, during prosecution, the
applicant referred to a single part, labeled as 129 in the figures, as a "stand-off spacer."  *See*
Hagan Decl., Ex. I (Appeal Brief dated Dec. 28, 2012) at 7 ("The invention of dependent Claim
24 . . . is the suction cup mounting platform (1) of allowed base claim 12, wherein the skirt
portion (137) of **the stand-off spacer (129)** further comprises . . . ." (emphasis added)).  As
another example, when a claim reciting "the stand-off," which depended from a claim reciting "a
substantially tubular spacer," was rejected during prosecution because the word "stand-off" did
not have a proper antecedent basis in the parent claim, the applicant amended the claim to
overcome the rejection by simply substituting the word "spacer" for "stand-off."  *See* Hagan
Decl., Ex. H (Amendment and Remarks dated November 18, 2011) at 3, 5-6 (claims 12 and 24);
*id.*, Ex. F (Office Action dated October 18, 2011) at 2, 6 (discussing claim 24).  In other words,
the applicant viewed both the "stand-off" and the "spacer" as referring to the same part of the
invention, and used the terms interchangeably.   This interchangeable use of "spacer" and "stand-
off" supports construing the two terms to have the same definition.  *See Edwards Lifesciences*,
582 F.3d at 1329 ("The interchangeable use of the two terms is akin to a definition equating the
two.").

The intrinsic and extrinsic evidence support construing the terms "spacer" and "stand-
off" as a piece of material that creates space between two things.  The specification explains that
the "spacer" causes one part of the claimed mounting platform to be "spaced away" from another

---

[6] The applicant also used these two terms, "spacer" and "stand-off," interchangeably with the
additional terms "post" and "stem."  Hagan Decl., Ex. I (Appeal Brief dated Dec. 28, 2012) at 3
("The invention of dependent Claim 2 . . . is the mounting platform (1) of allowable base claim
8, further comprising **a stand-off (post or stem 129)** coupled to the second face (15) of the
plate . . . ." (emphasis added)).

part of the mounting platform.  Hagan Decl., Ex. A ('861 patent) at 2:12-16 ("According to

another aspect of the invention, the flexible leg portions are **spaced away** from the mounting

plate **by a hollow tubular spacer** . . . ." (emphases added)).  NPI's proposed construction is also

supported by the extrinsic evidence, which confirms that "spacer" and "stand-off" refer to

something that creates "distance," or space, between two things, such that they "remain apart."

*See id.*, Ex. M (McGraw-Hill Dictionary of Engineering (2nd ed. 2003)) (defining "spacer" as "a

device for **holding two members at a given distance from each other**" (emphasis added)); *id.*,

Ex. J (The American Heritage College Dictionary (4th ed. 2007)) (defining "stand off" as "[t]o

stay **at a distance**; **remain apart** or aloof" (emphasis added)); *see also id.*, Ex. K (Webster's

New College Dictionary (3rd ed. 2008)) (defining "stand-off" as "[t]o maintain a **distance** from"

(emphasis added)).

Belkin does not appear to dispute that the terms are synonymous and refer to something

that "create[s] space."  Indeed, Belkin itself equates spacer and stand-off, and further proposes

construing them as something that "separates"—and therefore, necessarily creates space

between—two pieces of the inventive mounting platform.  *See* Dkt. No. 23-1 (Ex. A of Joint

Claim Construction and Prehearing Statement) at 3, 5 (proposing for both terms: "to the extent it

can be construed, 'spacer that projects substantially perpendicularly from the second face of the

mounting plate and **separates** the mounting plate from the base'" (emphasis added)).  In sum,

the parties appear to agree that "spacer" and "stand-off" refer to the same thing, and that defining

these terms as a part or piece of material that "create[s] space between two things" is proper.

The only disputes are, first, whether "spacer" should be construed at all, and second, if

the terms are construed, whether they should be structurally limited.  First, Belkin proposes that

"spacer" be given its plain and ordinary meaning.  But where, as here, the applicant acted as his

own lexicographer and set forth a definition equating two claim terms, plain and ordinary

meaning does not suffice for those two terms.  *See Edwards Lifesciences*, 582 F.3d at 1329 (Fed.

Cir. 2009) (rejecting ordinary meaning constructions for synonymous claim terms because the

1    patentee acted as a lexicographer by using the terms interchangeably, thereby setting forth a

2    "definition equating the two").

3         Second, the parties dispute two structural limitations that Belkin seeks to import: first,

4    that the spacer/stand-off is "substantially perpendicular" to the mounting plate, and second, that

5    the two pieces between which the spacer/stand-off creates space are necessarily the "mounting

6    plate" and the "base."  Neither limitation is proper.

7         First, projecting "substantially perpendicularly" is an improper structural limitation.

8    Aside from the fact that it causes unnecessary ambiguity, it is improper because neither the

9    intrinsic evidence nor the extrinsic evidence supports this requirement.  To the contrary, Belkin's

10   proposal is inconsistent with the specification, which describes one embodiment in which part of

11   the spacer/stand-off is "substantially **parallel**" to the mounting plate.  Hagan Decl., Ex. A ('861

12   patent) at 10:1-3.  Belkin's only support appears to be from drawings in the specification

13   illustrating exemplary embodiments, which do not limit the scope of the claims; it would be

14   improper to add such limitations into the claims.  *See GE Lighting Sols., LLC v. AgiLight, Inc.*,

15   750 F.3d 1304, 1310 (Fed. Cir. 2014) (finding "[i]t was error to import the structural limitations

16   of the preferred embodiment" into the disputed claim term); *Gart*, 254 F.3d at 1342 ("The[]

17   drawings are not meant to represent 'the' invention or to limit the scope of coverage defined by

18   the words used in the claims themselves.").

19        Belkin also attempts to improperly limit the terms based on the parts of the invention

20   between which the spacer/stand-off create space.  Specifically, Belkin's proposal would require

21   that the spacer/stand-off "separate," and therefore be physically positioned between, a "base" and

22   a "mounting plate."  In other words, it requires three different parts: a spacer/stand-off, a base,

23   and a mounting plate.  But such a requirement is nonsensical in the context of the invention.

24   The only reference to "base" in the specification with respect to the claimed invention is the base

25   of the spacer/stand-off.  *See* Hagan Decl., Ex A ('861 patent) at 9:41 ("base portion 127 of a post

26   or stem 129"); *id.* at 10:48-49 ("base portion 127 of the central post or stem 129"); *id.* at 10:62

27   (same); *id.* at 11:31 ("base portion 127 of the stem 129").  Thus, the base and the spacer/stand-

28

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF                                    - 13 -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

off are not separate parts, as Belkin's proposal would require.  Indeed, it would not make sense to define the spacer/stand-off as creating space between itself (or a part of itself, such as its base) and another part of the mounting platform.  Belkin's proposal is thus improper.  *See AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011) ("We strive, where possible, to avoid nonsensical results in construing claim language." (citing *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.,* 533 F.3d 1362, 1370 (Fed. Cir. 2008))); *see also Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1333 (Fed. Cir. 2016) (rejecting plaintiff's attempt to add a requirement into the claim construction that "would be nonsensical in the context of the specifications").

The parties agree that "spacer" and "stand-off" are synonymous, and that the terms refer to a part or piece of material that "create[s] space between two things."  Any additional limitations—particularly those proposed by Belkin, which are inconsistent with and unsupported by the specification—are unnecessary.  The Court should thus construe these terms according to NPI's proposed construction.

## VII.   CONCLUSION

NPI respectfully requests that its proposed constructions be adopted by the Court.

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 2:16-cv-00402-TSZ

- 14 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1    Dated:   March 24, 2017                    Respectfully submitted,

2                                               FENWICK & WEST LLP

3
                                                By: _s/Ewa M. Davison_
4                                                   David K. Tellekson, WSBA No. 33523
                                                    Ewa M. Davison, WSBA No. 39524
5                                                   Elizabeth B. Hagan, WSBA No. 46933
                                                    Jessica M. Kaempf, WSBA No. 51666
6                                                   Jonathan T. McMichael, WSBA No. 49895
                                                    1191 Second Avenue, 10th Floor
7                                                   Seattle, WA  98101
                                                    Telephone:    206.389.4510
8                                                   Facsimile:    206.389.4511
                                                    Email:        dtellekson@fenwick.com
9                                                                 edavison@fenwick.com
                                                                  ehagan@fenwick.com
10                                                                jkaempf@fenwick.com
                                                                  jmcmichael@fenwick.com
11                                                  *Attorneys for Plaintiff*
                                                    *National Products Inc.*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     NPI'S OPENING CLAIM
     CONSTRUCTION BRIEF                    - 15 -
     Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

# CERTIFICATE OF SERVICE

I, Sara McPhee, hereby certify that on March 24, 2017, I caused the foregoing

**NATIONAL PRODUCTS INC'S OPENING CLAIM CONSTRUCTION BRIEF** to be

served on the following parties as indicated below:

| | |
|---|---|
| **Ryan J. McBrayer (WSBA No. 28338)**<br>**Lane M. Polozola (WSBA No. 50138)**<br>PERKINS COIE LLP<br>1201 Third Avenue, Ste. 4900<br>Seattle, WA 98101-3099<br><br>*Attorneys for Defendant*<br>*Belkin International, Inc.* | [ ]  By United States Mail<br>[ ]  By Legal Messenger<br>**[X]  By Electronic CM/ECF**<br>[ ]  By Overnight Express Mail<br>[ ]  By Facsimile<br>[ ]  By Email [by agreement of counsel]<br>RMcBrayer@perkins coie.com<br>LPolozola@perkinscoie.com |

Dated:  March 24, 2017

By: *s/Sara McPhee*
For Ewa M. Davison, WSBA No. 39524
FENWICK & WEST LLP

NPI'S OPENING CLAIM
CONSTRUCTION BRIEF
Case No. 2:16-cv-00402-TSZ

- 16 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511