1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL PRODUCTS INC.,

Plaintiff,

v.

BELKIN INTERNATIONAL, INC.,

Defendant.

C16-402 TSZ

ORDER

THIS MATTER comes before the Court pursuant to _Markman v. Westview Instruments, Inc._, 52 F.3d 967 (Fed. Cir. 1995), to construe certain terms in United States Patent No. 8,505,861 B2 ("the '861 Patent"), which discloses a suction cup mounting platform having a flexible base.  Also before the Court is plaintiff's motion for leave to amend its infringement contentions, docket no. 24.  Being persuaded that neither an evidentiary hearing nor oral argument is necessary, _see Ballard Med. Prods. v. Allegiance Healthcare Corp._, 268 F.3d 1352, 1358 (Fed. Cir. 2001), and having reviewed the parties' briefs, as well as all other papers filed in connection with claim construction and plaintiff's motion, the Court enters the following order.

**Background**

For over a century, pneumatic disks or suction cups have been used to attach, hold, or mount items.  _See_ U.S. Patent No. 816,588 (1906) (disclosing a mirror that is retained

1    "firmly in place" on a window, wall, or door by "the well-known adhesive effect" of a

2    "pneumatic disk").  To be effective, suction cups must be mounted to relatively smooth

3    surfaces that are impervious to air.  _See_ U.S. Patent No. 2,968,460 (1961) (the "Van

4    Dusen Patent") at Col. 1, Lines 18-35 (observing that suction cup devices work on only

5    "a narrow range of surface types" and that even an "extremely slow" diffusion of air

6    through a surface defect or a porous material will ultimately destroy the vacuum and

7    release the mechanism).  One way to address the unsuitability of a surface for pneumatic

8    action is to more permanently attach to the surface an intermediary, which itself has the

9    requisite flat, impermeable structure for receiving a suction cup device.  For example, the

10   Van Dusen Patent discloses a membrane, which is typically circular, and which is coated

11   on one side with a pressure sensitive adhesive; the coated side of the membrane is affixed

12   to a surface by activating the pressure sensitive adhesive, and the other side of the

13   membrane receives the working face of a vacuum cup and is capable of creating an

14   airtight seal.  _See id._ at Col. 4, Lines 45-50.

15          The invention at issue in this case, like the membrane disclosed in the Van Dusen

16   Patent, serves as an intermediary; it is attached using a pressure sensitive adhesive to a

17   surface otherwise incompatible with suction cup application.  It is intended for use in

18   motor vehicles, to permit the non-permanent attachment, via suction cups, of brackets or

19   cradles for electronic devices, including smartphones, satellite radios, and personal digital

20   assistants.  _See_ '861 Patent at Col. 1, Lines 19-56, Ex. A to Polozola Decl. (docket

21   no. 27-1 at 15).  The base of the mounting platform disclosed in the '861 Patent conforms

22   to the various non-planar surfaces that might exist in the passenger compartment of a

23

1  motor vehicle, particularly along the dashboard and windshield, where device cradles

2  would likely be located.  *See id.* at Col. 1, Lines 60-63; *see also id.* at Col. 1, Lines 30-47.

3          The '861 Patent has sixteen claims, four of which (Claims 1, 6, 7, and 13) are

4  independent.  In its Disclosure of Asserted Claims and Preliminary Infringement

5  Contentions, Ex. A to Tellekson Decl. (docket no. 25-1), plaintiff National Products Inc.

6  ("NPI"), the assignee of the '861 Patent, alleged that the accused device, manufactured

7  by defendant Belkin International, Inc. ("Belkin"), infringes Claims 1–9, 11, 12, and 16.

8  After receiving NPI's infringement contentions, Belkin redesigned its product and

9  removed the accused device from the market.  *See* Polozola Letter, Ex. D to Tellekson

10  Decl. (docket no. 25-4).  Having now examined the redesigned product, NPI seeks to

11  amend its infringement contentions and reduce to four the number of claims it alleges are

12  infringed by both the accused device and the redesigned product, specifically Claims 1, 4,

13  5, and 6.  *See* Pla.'s Mot. to Amend at 2 (docket no. 24).  Belkin opposes NPI's motion to

14  amend its infringement contentions as being procedurally improper, untimely, and highly

15  prejudicial.

16          NPI's motion to amend its infringement contentions noted for consideration after

17  the parties' opening claim construction briefs were due and filed.  In their opening claim

18  construction briefs, the parties identified four terms that they wished the Court to

19  construe, namely "rib" and "joined between," which both appear in independent Claims 1

20  and 6, and "stand-off" and "spacer," which are separately used in claims other than those

21  NPI would allege are infringed if it was allowed to amend its infringement contentions.

22  NPI therefore asserts that the Court need not interpret the terms "stand-off" and "spacer,"

23

1   but Belkin takes the position that "rib" must be construed with respect to, and as having a

2   different meaning than, "stand-off" and "spacer," and that NPI's request to amend its

3   infringement contentions constitutes an improper attempt to avoid an unfavorable claim

4   interpretation.

5   **Discussion**

6   **A.      Claim Construction Standards**

7          The Court has both the authority and the obligation to construe as a matter of law

8   the meaning of language used in a patent claim. _Markman_, 52 F.3d at 979.  In doing so,

9   the Court must consider the intrinsic evidence in the record, meaning the claims, the

10  specification, and the prosecution history.  _Id._  The words of a claim are generally

11  assigned their "ordinary and customary meaning." _Phillips v. AWH Corp._, 415 F.3d

12  1303, 1312 (Fed. Cir. 2005).  The ordinary and customary meaning of a claim term is the

13  definition ascribed to it by "a person of ordinary skill in the art in question at the time of

14  the invention." _Id._ at 1313.  The context in which a claim term is used may also be

15  instructive.  _Id._ at 1314.  For example, if a claim refers to "steel baffles," the language

16  implies that baffles are not necessarily made of steel.  _Id._  The other claims of a patent

17  may also illuminate the meaning of a term, through _inter alia_ consistent usage of the

18  same term, or inclusion in a dependent claim of an additional term not present in the

19  related independent claim.  _Id._ at 1314-15.

20         Claims must also be read in light of the specification.  _Markman_, 52 F.3d at 979.

21  The specification is "the single best guide to the meaning of a disputed term." _Phillips_,

22  415 F.3d at 1315.  If the specification reveals a definition given to a claim term that

23

1    differs from the meaning it would otherwise possess, the inventor's lexicography trumps

2    the ordinary and customary, or dictionary, construction.  *Id.* at 1316.  In considering the

3    specification, however, the Court must take care not to import limitations from the

4    specification into the claims.  *See id.* at 1323.  The Federal Circuit has "repeatedly

5    warned" against confining the claims of a patent to the specific embodiments described in

6    the specification.  *Id.*

7          Similar to the specification, the prosecution history evidences how the inventor

8    understood the terms used in the patent.  *Id.* at 1317.  Because the prosecution history,

9    however, represents the "ongoing negotiation" between the United States Patent and

10   Trademark Office and the applicant, it might suffer from a lack of clarity and is often less

11   useful for claim construction purposes than the specification.  *Id.*  In addition, although

12   the prosecution history "can and should be used to understand the language used in the

13   claims," it may not itself "enlarge, diminish, or vary" the limitations in the claims.

14   *Markman*, 52 F.3d at 980.

15         The Court may, in its discretion, consider extrinsic evidence as an aid in deriving

16   the "true meaning" of the language employed in the patent.  *Id.* (quoting *Seymour v.*

17   *Osborne*, 78 U.S. 516, 546 (1870)).  Extrinsic evidence may include expert or inventor

18   testimony, dictionaries, and learned treatises.  *Id.*  Extrinsic evidence is generally less

19   reliable than intrinsic evidence in construing the claim terms, and the Court must assess

20   such evidence accordingly, bearing in mind the flaws inherent in each type of extrinsic

21   evidence.  *See Phillips*, 415 F.3d at 1318-19.  Moreover, extrinsic evidence may not be

22   used to vary or contradict the terms of the claims in the patent.  *Markman*, 52 F.3d at 981.

23

1   **B.    Disputed Claim Terms**

2         **1.    "Rib" and "Joined Between"**

3         The parties have separated the terms "rib" and "joined between" for purposes of

4   making their claim construction arguments.  The terms, however, appear together and

5   in sequence in each of the claims at issue, namely independent Claims 1, 6, and 7, and

6   their dependent claims.  Claim 7, which includes a "spacer" limitation that is not set forth

7   in Claims 1 and 6, is discussed in the next subsection.

8         Claim 1 discloses:

9             A suction cup mounting platform, the mounting platform
          comprising:

10          a substantially rigid plate having first and second opposing faces;

11          a suction cup mounting surface formed on the first face of the plate;

12          a skirt portion coupled to the second face of the plate;

13          a plurality of flexible legs coupled to the skirt portion and having a
            bonding surface facing away from the plate;

14
15          a ***rib joined between*** the second face of the plate and the skirt portion;
            and

16          a bonding agent adhered to the bonding surface of the plurality of
            flexible legs.

17  '861 Patent at Col. 11, Lines 50-62 (docket no. 27-1) (emphasis added).  Claim 6

18  contains all of the language of Claim 1, and adds the following phrase:

19          wherein the skirt portion further comprises an opening between adjacent
            legs and communicating with a periphery of the skirt, the ***rib*** being

20          ***joined between*** the second face of the plate and the skirt portion
            adjacent to one of the openings.

21
22  _Id._ at Col. 12, Lines 27-31 (emphasis added).

23

The specification illustrates two alternative embodiments that are relevant in this matter.  Both embodiments contain a "substantially rigid plate" whose first (or top) face (13) contains a "suction cup mounting surface" or a "substantially smooth and planar surface" (17) and whose second (or bottom) face (15) is coupled to a skirt (137) that is attached to numerous flexible legs (121).  *See id.* at Figs. 14-16 & 17-18.  Moreover, both embodiments show "a plurality of gussets or ribs joined between the second [or bottom] face **15** of the mounting plate **11** and the flared skirt portion **137** of the stem **129**."  *Id.* at Col. 10, Lines 21-24.  According to the specification, the gussets or ribs (141) serve the purpose of stabilizing the mounting plate relative to the stem (or skirt) when the legs are bonded to the target (for example, a dashboard or windshield).  *Id.* at Col. 10, Lines 24-26.



*Id.* at Figs. 14-18.

The parties ask the Court to construe the terms "rib" and "joined between" as follows:

| Term | NPI's Proposal | Belkin's Proposal |
|---|---|---|
| **"rib"** | "a structure that stabilizes or supports" | plain and ordinary meaning,[1] *i.e.*, "a narrow piece that protrudes from a center support" |
| **"joined between"** | plain and ordinary meaning,[1] *i.e.*, "located between two other parts" and directly or indirectly connected to each of them | "touching both" |

Pla.'s Br. at 4 & 7 (docket no. 28); Def.'s Br. at 12, 15, & 16 (docket no. 26).  Belkin further indicates that the term "rib" must be distinguished from the term "stand-off," which appears in dependent Claims 2 and 3, and from the term "spacer," which is used in Claim 7 and its dependent claims.

## 2. **"Stand-Off" and "Spacer"**

Claim 2 adds to the limitations of Claim 1 the following element:

> a **_stand-off_** coupled to the second face of the plate adjacent to a center portion thereof, the **_stand-off_** further comprising the skirt portion adjacent to an end portion thereof distal from the plate; and
>
> wherein the plurality of the legs is further projected substantially radially outwardly of the skirt portion of the **_stand-off_**.

*Id.* at Col. 11, Line 63 – Col. 12, Line 3 (emphasis added).  Claim 3 references the mounting platform of Claim 2 and states:

> wherein the **_stand-off_** further comprises a tube portion being substantially hollow at least adjacent to the skirt portion of the **_stand-off_**.

---

[1] The Court assumes that the parties meant to refer to the "ordinary and customary" standard summarized in *Phillips*.  *See* 415 F.3d at 1312-13.

1    _Id._ at Col. 12, Lines 4-6 (emphasis added).  The term "stand-off" does not appear in the

2    specification or anywhere else in the '861 Patent other than in Claims 2 and 3.

3         Claim 7 discloses:

4              A suction cup mounting platform, the mounting platform
         comprising:

5

6         a substantially rigid monolithic plate having first and second opposing
              faces;

7         a substantially smooth and planar surface formed on the first face;

8         a plurality of radially extended and substantially flexible leg members
              spaced away from the plate at a central portion of the second face
              thereof, each of the leg members having a bonding surface facing
9              away from the plate;

10        a substantially tubular _**spacer**_ coupled between the leg members and the
              plate adjacent to the central portion of the second face thereof,
11             wherein the _**spacer**_ further comprises a terminal skirt portion distal
              from the second face of the plate and having the leg members
12             extended therefrom;

13        a _**rib joined between**_[2] the plate at the second face thereof and the
              terminal skirt portion; and

14

15    _____

16    [2] Claims 12 and 16, each of which depend from Claim 7, incorporate the "spacer" limitation, but also
      speak in terms of a "plurality of ribs," as follows:

17             12.  The mounting platform of claim 7, wherein the skirt portion of the _**spacer**_ further
      comprises substantially radially extended openings separating the leg members and
      communicating with a periphery of the skirt; and
18
              further comprising _**a plurality of ribs joined between**_ the plate at the second face
                   thereof and the terminal skirt portion adjacent to different ones of the openings.
19
                   . . . .
20             16.  The mounting platform of claim 7 wherein the leg members are separated by
      openings extended therebetween and communicating with a periphery of the skirt; and
21
              further comprising _**a plurality of ribs joined between**_ the second face of the plate and
                   the flared skirt portion adjacent to different ones of the openings extended between
22                   the leg members.

23    _Id._ at Col. 13, Lines 1-7 & Col. 14, Lines 13-19 (emphasis added).

ORDER - 9

> a pressure sensitive adhesive coupled to the bonding surface of each leg member.

*Id.* at Col. 12, Lines 32-52 (emphasis added).  The only time the word "spacer" appears in the '861 Patent, other than in the claim language, is in the summary, which describes the invention as having "flexible leg portions . . . spaced away from the mounting plate by a hollow tubular ***spacer*** formed with a skirt portion distal from the mounting plate and having the flexible leg portions radially extended therefrom."  *Id.* at Col. 2, Lines 12-16 (emphasis added).

The specification does not use the terms "stand-off" and "spacer," and instead employs the words "post" or "stem" when discussing the embodiments of the invention disclosed in the '861 Patent.  For example, with reference to Figures 14, 15, and 16, the specification indicates that "the leg portions **121** each extend substantially radially outwardly from a substantially disc-shaped base portion **127** of a ***post or stem*** **129** projected substantially central of the second face **15** of the mounting plate **11**."  *Id.* at Col. 9, Lines 39-42 (emphasis added).  The specification also explains that "the ***stem*** **129** is optionally configured as having a thin-walled hollow substantially cylindrical tube portion **135** with a flared skirt portion **137** coupled into the leg portions **121**."  *Id.* at Col. 9, Lines 55-58 (emphasis added).

For ease in deciphering the drawings in the '861 Patent, Belkin has provided colored or shaded versions of Figures 15 and 18, respectively:



Def.'s Br. at 3 (docket no. 26 at 6).  In these figures, which have been simplified by eliminating some of the original labels, the vertical or tubular portion of the "post" or "stem" (129) is blue, while the gussets or ribs (141) are red.  To be consistent with the claim language and the specification, the legs (121), which are part of the "stand-off," "spacer," "post," or "stem," should also be shaded in blue.

The parties agree that the terms "stand-off" and "spacer" are interchangeable, but they dispute how the terms should be construed.  According to NPI, the terms "stand-off" and "spacer" mean "a piece of material used to create space between two things."  Pla.'s Br. at 10 (docket no. 28).  In contrast, Belkin argues that the terms "stand-off" and "spacer" are synonymous with the words "post" or "stem," which Belkin defines as a "spacer that projects substantially perpendicularly from the second face of the mounting plate and separates the mounting plate from the base."  Def.'s Br. at 9 (docket no. 26).

### 3.    <u>Ordinary and Customary Meaning</u>

The parties do not contend that the inventor employed an unusual lexicon in setting forth the claims of the '861 Patent or that the terms "rib," "joined between," "stand-off," and/or "spacer" have any specialized meaning, and thus, "the ordinary [and customary] meaning of those words to those skilled in the art controls, unless the evidence indicates that the inventor used them differently."  <u>See</u> <u>Karlin Tech. Inc. v. Surgical Dynamics, Inc.</u>, 177 F.3d 968, 971 (Fed. Cir. 1999).  Because the terms "rib"

1    and "spacer" both appear in Claim 7, and because the term "rib" is used in a different

2    manner than the terms "stand-off" and "spacer," the term "rib" must be construed to

3    identify a component distinct from a "stand-off" or "spacer." *See Becton, Dickinson &*

4    *Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a

5    claim lists elements separately, 'the clear implication of the claim language' is that those

6    elements are 'distinct component[s]' of the patented invention." (alteration in original,

7    quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004))).  Thus, to

8    understand the term "rib," the "stand-off" or "spacer" elements must first be defined.

9        A spacer is a "device for holding two members at a given distance from each

10   other."  McGraw-Hill Dictionary of Scientific and Technical Terms 1984 (6th ed. 2003)

11   [hereinafter "McGraw-Hill"].  The specification uses the words "post" and "stem" as

12   synonyms for "spacer," thereby describing a particular shape for the spacer, which is

13   explicitly set forth in the claim language, namely "substantially tubular."  *See* '861 Patent

14   at Col. 12, Line 43; *see also Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901,

15   907 (Fed. Cir. 2005) ("The term 'substantial' is a meaningful modifier implying

16   'approximate,' rather than 'perfect.'" (quoting *Liquid Dynamics Corp. v. Vaughan Co.*,

17   355 F.3d 1361, 1368 (Fed. Cir. 2004))); McGraw-Hill at 1645 (defining "post" as a

18   "vertical support such as a pillar, upright, or fence stake"); Webster's Third New Int'l

19   Dictionary 2235 (1981) [hereinafter "Webster's"] (defining "stem" as "something felt to

20   resemble a plant stem," listing as an example "a spindle or guide rod on a mechanical

21   part").

22

23

1    Having compared the specification's descriptions of the embodiments with the

2    claim language, the Court agrees with the parties that the terms "stand-off" and "spacer,"

3    which have the same meaning as "post" or "stem," are interchangeable. The Court,

4    however, rejects Belkin's proposal to construe "stand-off" and "spacer" to require that

5    they project "substantially perpendicularly" from the bottom face of the mounting plate.

6    Such language would improperly import another limitation into the claims at issue. A

7    "substantially tubular spacer" could conceivably form an acute or obtuse angle (as

8    opposed to a right angle) with the bottom face of the mounting plate and still meet the

9    express limitations of Claim 7 and its dependent claims. The Court also declines to adopt

10   Belkin's suggestion that a stand-off or spacer "separates the mounting plate from the

11   base." Although the specification discusses a "base portion," none of the claims use the

12   terms "base" or "base portion," and Belkin's construction would render "stand-off" and

13   "spacer" indefinite by referring to a non-existent element.

14    The Court also refuses to construe a stand-off or spacer as "a piece of material

15   used to create space between two things," as NPI requests. Claims 2 and 3 specify that

16   the stand-off is comprised of a skirt portion with a plurality of legs projecting radially

17   outwardly. Claim 7 indicates that the spacer has a skirt portion with leg members

18   extending therefrom. The legs are essentially the "substantially disc-shaped base

19   portion" to which the specification refers, *see* '861 Patent at Col. 9, Lines 42-50, but they

20   are part of the stand-off or spacer, not a different component. Thus, the stand-off or

21   spacer does not create space between two other things, but rather is attached to the

22   bottom face of the rigid (mounting) plate and then terminates in radially extended legs at

23

1    some distance away from the plate.  The Court construes the terms "stand-off" and

2    "spacer" as they are defined in the claims at issue, namely as an element having a skirt

3    portion with a plurality of radially extended legs, which are situated away (distal) from

4    the mounting plate.

5            With the understanding that the "rib" component must be distinct from a "stand-

6    off" or "spacer," the Court also rejects the parties' proposals concerning the meaning of

7    the term "rib."  In ordinary parlance, a rib is "one of the paired curved bony or partly

8    cartilaginous rods that stiffen the lateral walls of the body."  Webster's at 1950.  The

9    word is used to identify a multitude of objects that are similar in shape, concept, or

10   purpose, including the hinged rods of an umbrella, the members supporting a bridge, and

11   the arched structures of a vault.  _See id._  Any "ridge, fin, or wing . . . used to strengthen,

12   stiffen, or dissipate heat" or "provide lateral, longitudinal, or horizontal support" can be

13   considered a rib.[3]  _See id._  Belkin cites no authority for its assertion that the ordinary and

14   customary meaning of rib is "a narrow piece that protrudes from a center support," and

15   such definition would impose limitations that are unwarranted by the claim language.

16   Belkin's interpretation also unjustifiably eliminates a variety of elements that might

17   qualify as a rib.  In contrast, NPI's suggestion that a rib is "a structure that stabilizes or

18

19   _____

20   [3] The specification analogizes a "rib" to a "gusset" and uses the terms interchangeably.  A gusset,
     however, is commonly considered to be quite different from a rib; it is usually a "V-shaped or triangular
21   insert (as in a sail or skirt)" or a plate that "joins the truss members in a truss joint or fits at a joint of a
     frame structure."  Webster's at 1013.  Only the term "rib" appears in the claims, and to the extent the
     specification's reference to "gusset" is ambiguous or confusing, the Court has disregarded it.  _See_
22   _Renishaw PLC v. Marposs Societa´ per Azioni_, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("The construction
     that stays true to the claim language and most naturally aligns with the patent's description of the
23   invention will be, in the end, the correct construction.").

ORDER - 14

1 supports" is overly inclusive, sweeping in every manner of bracing and all foundation

2 styles.  The term "rib" is not as ubiquitous or indefinite as NPI contemplates.

3      Although the Federal Circuit has recognized that "[w]ords are symbols, linguistic

4 embodiments of information sought to be communicated, and, as such, can be imperfect

5 at representing their subject," _Fenner Invs., Ltd. v. Cellco P'ship_, 778 F.3d 1320, 1323

6 (Fed. Cir. 2015), the Court is satisfied that the word "rib" is sufficiently precise and

7 requires no further interpretation.  In this context, a rib can take a variety of forms, but it

8 cannot be the tubular component having a skirt and radially projecting legs that is known

9 alternatively as a stand-off, spacer, post, or stem.  With this caveat in mind, whether a

10 component is a "rib" is best answered by using either Justice Stewart's famous "I know it

11 when I see it" standard, _see Jacobellis v. Ohio_, 378 U.S. 184, 197 (1964) (Stewart, J.,

12 concurring), or something akin to the proverbial "duck test," _i.e._, if it looks, walks, and

13 quacks like a duck, it's a duck, _see S.I. Stud, Inc. v. United States_, 24 F.3d 1394, 1396

14 (Fed. Cir. 1994) (Plager, C.J., dissenting) (disagreeing with the majority's "determination

15 that something that looks like a bolt, works like a bolt, and is sold for the purpose of

16 bolting things together, is nevertheless not a bolt, but a stud," referencing the "duck test"

17 as the applicable standard).  Using further verbiage to define the word "rib" simply risks

18 incorporating limitations where none had been before.

19      The Court is likewise persuaded that the phrase "joined between" adequately says

20 what it means.  The word "join" means "to put or bring together and fasten, connect, or

21 relate so as to form a single unit, a whole, or a continuity."  Webster's at 1218.  The word

22 "between" describes "the space that separates" or "an intermediate position in relation to

23

two other objects." *Id.* at 209. Thus, the claim language "a rib joined between the second face of the plate and the skirt portion" is easily understood to connote a rib that is fastened or connected within the space that separates the bottom face of the mounting plate and the skirt portion, which for purposes of Claims 2, 3, and 7 (and its dependent claims) is part of the stand-off or spacer.

In suggesting that the words "touching both" be substituted for "joined between," Belkin attempts to import a limitation that is unsupported by the ordinary and customary meaning of the term "joined between." As evidenced by the prosecution history, neither the examiner nor the applicant interpreted the words "joined between" to require that the rib touch both the bottom of the mounting plate and the skirt portion. *See* Ex. B to Polozola Decl. (docket no. 27-2). In rejecting the original Claim 1,[4] the examiner cited United States Patent No. 4,309,011 ("Spector"), which discloses reinforcing fins (23), similar to ribs, that are attached to a form of post called a standard (19), but do not extend along the entire length of the standard or touch the underside of a pulley (20), which is analogous to the mounting plate of the '861 invention. *See* Spector at Col. 4, Lines 39-55 and Figs. 4 & 5, Ex. G to Hagan Decl. (docket no. 29-7):



---

[4] The original Claim 1 was later cancelled, and the original Claim 8 was rewritten to become Claim 1. *See* Resp. to Official Action at 6-7 (Feb. 27, 2012), Ex. B to Polozola Decl. (docket no. 27-2 at 73-74).

1    The examiner stated, in relevant part, that "Spector teaches . . . a rib (23) ***joined between***

2    the second face of the plate and the skirt portion."  Office Action at 3, Ex. B to Polozola

3    Decl. (docket no. 27-2 at 95) (emphasis added).  The inventor did not challenge this

4    conclusion.  <u>See</u> Ex. B to Polozola Decl. (docket no. 27-2).

5           Ultimately, the questions of whether a component is a "rib" and whether such

6    element is "joined between" the bottom of the mounting plate and the skirt portion are

7    not matters of claim construction, but rather issues of infringement that must be decided

8    by the trier of fact.  These claim terms are clear enough to permit the trier of fact to

9    perform its work, and the Court therefore declines to rewrite or otherwise alter the

10   language that received the United States Patent and Trademark Office's imprimatur.

11   <u>See</u> <u>Ballard</u>, 268 F.3d at 1358 ("<u>Markman</u> does not require a district court to follow any

12   particular procedure in conducting claim construction.  It merely holds that claim

13   construction is the province of the court, not a jury. . . .  As long as the trial court

14   construes the claims ***to the extent necessary*** to determine whether the accused device

15   infringes, the court may approach the task in any way that it deems best." (emphasis

16   added)); <u>*see also*</u> <u>*Static Control Components, Inc. v. Lexmark Int'l, Inc.*</u>, 502 F. Supp. 2d

17   568, 575-76 (E.D. Ky. 2007).[5]

18

19   _____

20   [5] In <u>*Static Control*</u>, the district court criticized one side's "exhortation to attach a synonym to self-defined
     and simple words" because it invited "a meaningless result that mocks the notion of construction."  502
21   F. Supp. 2d at 576.  The district court used as an example the term "dog," which a party might argue, in
     light of intrinsic evidence, must be construed as weighing less than 50 pounds, and as a result, such
     party's accused dog is non-infringing because it is too heavy.  <u>*Id.*</u> at 575.  Determining whether a "dog"
22   has a maximum weight would be an exercise in claim construction, but deciding whether "dog" means
     "canine" is a pointless endeavor, prompting the query of how an accused "dog" would infringe but an
23   accused "canine" would not.  <u>*Id.*</u>

ORDER - 17

1  **C.     Amendment of Infringement Contentions**

2        Belkin contends that NPI's motion to amend its infringement contentions is

3  untimely and procedurally improper.  The Local Patent Rules, however, envision that

4  infringement contentions may be amended if the Court's claim construction is different

5  from the interpretation proposed by the party seeking amendment.  Local Patent Rule

6  124.  In light of the Court's rulings concerning the claim terms "rib," "joined between,"

7  "stand-off," and "spacer," most of which varied from NPI's positions, NPI will be

8  permitted to amend its infringement contentions.  NPI shall serve and file its amended

9  infringement contentions within twenty-eight (28) days of the date of this Order.

10 **Conclusion**

11       For the foregoing reasons, the Court ORDERS as follows:

12       (1)     The terms "stand-off" and "spacer" have the same meaning, and are

13 construed as an element having a skirt portion with a plurality of radially extended legs,

14 which are situated away (distal) from the rigid (mounting) plate; the "stand-off" or

15 "spacer" is distinct from any "rib" or "plurality of ribs";

16       (2)     The terms "rib" and "joined between" are assigned their ordinary and

17 customary meanings;

18       (3)     Plaintiff's motion for leave to amend its infringement contentions, docket

19 no. 24, is GRANTED; and

20       (4)     The Clerk is DIRECTED to send a copy of this Order to all counsel of

21 record.

22

23

1    IT IS SO ORDERED.

2    Dated this 18th day of July, 2017.

3

4    _____

5    Thomas S. Zilly
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 19